Daniel *v.* Frazer.

---

HENRY C. DANIEL *v.* MICAJAH FRAZER.

1. CONTRACT: STATUTE OF FRAUDS.—A contract for the sale of personal property, where the property is not received in whole or in part by the buyer, the purchase-money not paid, and no note or memorandum of the bargain made or signed by either party, is absolutely void.

2. CONTRACTS: SPECIFIC PERFORMANCE OF, WHEN DECREED.—In equity, the specific performance of a contract is not a matter of right, but of sound legal discretion. Hard and unconscionable bargains will never be decreed to be specifically performed, and only such contracts as are just and fair in all their parts.

3. CONTRACT: SPECIFIC PERFORMANCE: FRAUDULENT CONCEALMENT OF MATERIAL FACT.—A court of equity will not decree the specific performance of a contract for the sale of personalty, in favor of a party who has concealed from the other the existence of certain facts, which would have materially impaired the value of the consideration paid.

APPEAL from the Special Court of Equity at Jackson. Hon. Geo. T. Swann, judge.

Appellant filed his bill in the Special Court of Equity at Jackson, to recover of appellee twenty-seven bales of cotton. The bill charges that the cotton was purchased on the 17th day of March, 1865, part of which cotton, about ten bales, was in the lint, and the balance in the seed. That appellee estimated the cotton at thirty bales, but was to retain one for his own use. That it was the understanding that said cotton was to be weighed, and appellant was to pay therefor at the rate of $1 per pound in Confederate money. That afterwards, on the 17th day of April, 1865, it was agreed between the agent of appellant and appellee, to estimate said cotton at twenty-seven bales of four hundred pounds each; and said agent, at that time, paid appellee the sum of $10,800, in Confederate States treasury notes. That the cotton, at the time, was on the plantation which appellant had a short time before purchased from appellee, who resided on the same as the tenant of appellant. That appellee interposed no objection to the said sale of cotton until the 27th day of June, 1865, when he notified appellant that he would not abide by said contract, nor permit him to control or have possession of said cotton.

The prayer is for the delivery of the cotton, or the payment of its value in money.

The answer denies the agreement to sell on the 17th day of March, 1865; states that at that time appellee offered to sell the cotton for $1 per pound, in Confederate money, to appellant; that no money was paid, and no actual contract of sale, verbal or written, was made.

Daniel *v.* Frazer.

Appellee admits the receipt of $10,800 in Confederate money, on the 17th day of April, 1865, from the agent of appellant. That at the time he received these Confederate notes, appellee believed them to be valuable, and the circulating medium of the country; but, in truth, they were utterly valueless, and had ceased to circulate in the State of Mississippi, and in the city of Jackson, the residence of appellant; and this was well known to appellant and his agent at the time of the payment. That appellee resides in the country, and was ignorant at the time of the surrender of the Confederate army, and the worthlessness of Confederate money, and that it had ceased to circulate as money. That these facts being known to appellant, he employed one Dooty as his agent, to push rapidly forward, and in advance of the news, to the house of appellee, for the purpose of imposing on him the worthless Confederate money in payment of said cotton. That the agent of appellant reached the house of appellee at an early hour in the morning, before breakfast, swimming creeks for the purpose of getting there. Appellee asked him if there was any news. To which he replied, there was not, and stated that he had come for the purpose of purchasing the cotton which appellee had previously proposed selling to appellant. Whereupon appellee agreed to sell the cotton, and receive the Confederate money in payment of the same; the said agent concealing the fact that the Confederate money was worthless, and had ceased to circulate, in consequence of the surrender of the Confederate forces. That it was the purpose of appellant to cheat and defraud appellee, in imposing on him the Confederate money, at the time valueless, tenders back the amount so paid, and denies that he was content with said sale; but when he found the money was worthlesss, had no idea that appellant would pretend or desire to enforce the said sale, and still less did he believe that appellant had engaged in this scheme knowingly, and for the express purpose of cheating and defrauding him. That as soon as he learned of the surrender of the Confederate forces, he made inquiry for the agent of appellant, and was informed that he

had left the neighborhood. That appellant stated in a letter, which was handed at the time of the sale, that he expected to leave in a few days for the "Trans-Mississippi Department," and urged this as his reason for closing the contract for the sale of the cotton, without weighing, not wishing to be delayed in his trip.

It was shown by the testimony that the surrender of the Confederate forces under Gen. Lee was known to appellant on the evening of the 14th of April, 1865, and published on the morning of the 15th in the Jackson *News.* That Dooty, as the agent of appellant, was started from Jackson on the 15th of April to the residence of appellee, in Holmes county, with instructions to buy his cotton, and supplied with the Confederate money to make the payment at the price at which it had been previously offered. That he reached the residence of appellee on the morning of the 17th. When asked what was the news, replied, "Nothing, except some rumors." Told appellee that he was sent by appellant to pay him the money for the cotton, and that he would agree to take it without weighing, as twenty-seven bales of four hundred pounds each. Paid appellee the money, and took from him the following receipt:

"Received from John W. Robinson, by the hands of L. H. Dooty, the sum of $10,800, Confederate money, for a lot of cotton, in my gin-house, supposed to be twenty-seven bales of cotton, reserving one for home consumption; the said Robinson takes the cotton as estimated, without any reclimation or further claim against me."

"April 16, 1865.                                    M. FRAZER."

The receipt, though dated the 16th of April, was executed on the 17th. The reason that John W. Robinson's name is in the receipt was, that it was expected that Robinson would go and see appellee, and deliver the money and letter which was carried by Dooty. The receipt was taken in Robinson's name at the suggestion of appellee, as he, Robinson, was the agent of appellant, and known to be such.

The news of the surrender of General Lee reached the neighborhood of appellee on the 17th of April, and was communicated to appellee on the 18th.

The testimony is conflicting as to the effect of the news of General Lee's surrender on the value of Confederate money. All the witnesses agree that the effect was to greatly depreciate it; some testify that it continued to circulate as money, others that it was totally worthless.

A decree was rendered in favor of appellee, dismissing the petition. From this decree an appeal is taken.

*George L. Potter*, for appellant, contended,

1. It is not necessary that the written evidence of a contract should all be in one writing; it is sufficient if the terms of the contract can be made out "from any writings of the party sought to be charged." 1 Greenleaf's Ev., section 26; Story's Eq. Plead., section 763; 1 Lead. Cases in Eq. 566, 567, 573.

2. Courts do not regard contracts not executed according to the statute of frauds, as void absolutely. They simply hold that they cannot be enforced, if the other party raises the objection that they are not in writing. If the defendant admits the contract, and fails to insist on the statute, the court will enforce it. *Abbott* v. *Draper*, 4 Denio, 53.

If money is paid under such a contract, it cannot be recovered back so long as the other party is not in default. *Westfall* v. *Parsons*, 16 Barb. 649; *Dowdle* v. *Camp*, 12 Johns. 451.

A party may defend for acts done under such a contract. *Phillbrook* v. *Belknap*, 6 Vermont, 383.

A third party cannot interpose the statute to show the contract was void. "The party to be charged alone can object." 1 Fairf. 382.

Acts done in pursuance of a void parol contract are lawful and binding. A party who has permitted another to perform acts on the faith of an agreement shall not insist that the agreement is bad. Such acts are received as evidence of the contract, the court regarding what has been done as a consequence of the contract. 18 Conn. 230, 231.

3. The contract was made on the 17th March, 1865, and afterwards consummated. The suppression or concealment of material facts must be of "material facts in the *making* of the contract." 2 Kent, 652 (482).

And even in the case of making the contract there is a limit to the duty of disclosure.    5 Barr. 467 ; 14 Barb. 72 ; 2 Brown, 420 ; Jacobs, 178.

4. The defendant made no effort to return the money until he tendered it with his answer, 31st August, 1865, having kept four and a half months until the Confederacy had become extinct. A party is bound by the receipt of counterfeit money, unless he returns it within a reasonable time.    7 Leigh, 617 ; 11 Illinois, 617 ; 17 Mass. 33 ; 9 N. Hamp. 365.

*D. Shelton*, for appellant, contended,

1. That silence will vitiate a contract for fraud in the suppression of facts, which the party withholding is under obligation, not only of conscience but of law, to disclose to the other, and in respect to which he cannot innocently be silent while he is contracting.    1 Story's Eq. 204 ; 6 Ves. 173 ; 1 Jac. R. 178 ; 2 Kent, 484 ; 2 Bro. Ch. R. 420.

2. That where there is no special trust or confidence, a party is under no obligation of conscience or law to give intelligence of *extrinsic circumstances* which might influence the price of the commodity, and especially if the means of intelligence are equally accessible to both parties.    2 Wheat. R. 178 ; 1 Jac. R. 178.

3. That equity will not relieve when the party complaining had no right to rely on the other party, but could have informed himself.    1 Story's Eq. 208 ; 16 Vesey, 144 ; 5 Johns. R. 454.

4. That where a party intends to abandon or rescind a contract, he must do so promptly on the first information of the grounds on which he seeks to rescind.    He cannot after that information hold on to the contract and wait for future events, or to test the profits of his trade, but must abandon promptly ; and especially is this so when damage may result to the other

party by delay. 3 Johns. Ch. R. 23; 17 Johns. R. 437; 12 Id. 305.

*W.* and *J. R. Yerger*, for appellee, contended,

1. There was no sale on the 17th of March, 1865; no money was paid, no cotton delivered, and no agreement in writing. To constitute delivery, "the possession must have been parted with by the owner so as to deprive him of the right of lien." 3 Parsons Cont 41.; 9 M. & W. 41; 1 Comst. R. 261; 1 Taunt. 458; 3 B. & Ald. 324; 2 C. & P. 534.

"Where there is a condition precedent attached to a contract of sale and delivery, the property does not vest in the vendee on delivery, until he performs the condition, or the seller waives it. 2 Kent, section 39, page 497.

2. There was no valid sale until the 18th of April, 1865, and the payment was made in Confederate money. The Confederate money was valueless at the time, and whether Frazer knew it or not, the law is plain.

Where bank bills are received in payment, and at the time the bank had stopped payment, the loss falls on the party paying. 11 Wend. 9; 13 Wend. 11; 11 Vermont, 516; 9 N. Hamp. 365; Chitty on Contracts, 643 and notes; 4 Met. 43; 2 Porter, 280; 11 Vermont, 576; 9 Porter, 174; 3 Ohio, 275; Byles on Bills, 454.

3. But whether the money was worthless or not, it had greatly depreciated, and that fact was known to Daniel, and he not only concealed the same, but actually misled Frazer.

"Courts of equity will grant relief where there is undue concealment or '*suppressio veri*,' to the injury or prejudice of another." Story's Eq., sections 204, 205, 206; Kent's Com., page 639.

The rescission and performance of contracts is not a matter of right in either party, but of sound and reasonable discretion in the court. Story's Eq., section 742; *King* v. *Hamilton*, 4 Peters' R. 328; Curtis' ed. 82.

Courts of equity will not decree specific performance where there is fraud or mistake, or of hard and unconscionable bargains.

33

Story's Eq. 769, 750, 213, 222, 191, 192, 193, 203, 205, 206;
2 Kent's Com. 640, 207; 1 Johns. Ch. R. 630; 1 Jacobs' R. 169;
Walker's (Miss.) R. 72; 28 Miss. R. 353; *Oswald* v. *McGhee.*

The misrepresentation of the agent in the business entrusted
to him, is the misrepresentation of the principal. Parsons on
Cont. (old ed.), page 62.

ELLETT, J., delivered the opinion of the court.

In this case it appears, from the testimony of complainant
himself, that on the 9th of February, 1865, he purchased the
plantation of the defendant, situate in Holmes county, about
fifty or sixty miles from Jackson, and four hundred bushels of
corn.  At the same time defendant offered to sell him all the
cotton on the place, estimated by him at about thirty bales, ten
of which, according to the estimate, were in the lint, and twenty
in the seed.  Complainant, thinking the cotton a bad invest-
ment, declined to purchase it.  Finding afterwards that he
could make an advantageous use of it, he returned to defend-
ant's house on the 17th day of March, and purchased it.  He
states the transaction in these words: " I purchased his (defend-
ant's) cotton at one dollar per pound, payable in Confederate
money.  I did not have the money with me at the time to pay
for the cotton, and so informed Col. Frazer.  He said that was
perfectly immaterial; that we could not weigh the cotton just
then, and he did not expect to use the money immediately."

This agreement was not good or valid to bind either party;
the property not having been received in whole or in part
by the buyer, the purchase-money not having been paid or
secured, and no note or memorandum in writing of the bargain
having been made and signed by either of them.  While the
matter remained in this situation, both parties were at liberty
to retract, and if the cotton had been destroyed, the loss would
unquestionably have fallen upon the defendant.

On the 27th of March, the defendant proposed to complainant
to allow him to retain one bale of the lot, and that complainant
should take the residue without weighing, as being twenty-
seven bales of four hundred pounds each, and pay for it at the

Daniel *v.* Frazer.

rate of one dollar a pound, to which proposition complainant acceded, but it was waived on account of his not having money enough with him to make the payment.

On the 14th of April, complainant received the information of the surrender of General Lee, and on the next morning the fact was announced in the paper published in the city of Jackson, where complainant resided. On that day he dispatched a special messenger on horseback to the defendant, thereby anticipating the arrival of the railroad train, bearing this news, in the vicinity where defendant resided, and proposed, in writing, to accept the offer made on the 27th of March, and to take the cotton at twenty-seven bales of four hundred pounds each, after deducting one bale for the use of the defendant. The agent who bore this proposition, and the Confederate money to carry it out, on being asked by defendant if there was any news, replied that he had no news, but that there were some rumors of no interest. The defendant, in ignorance of the fact that anything had occurred to depreciate the value of Confederate money, accepted the payment, and made a written transfer of the cotton. The question is, whether a court of equity will lend its aid to enforce the specific performance of this contract.

It is unnecessary to decide whether in a court of law this contract would be held void on account of false representations, or fraudulent concealment, by the complainant. That question is not before this court. The specific performance of contracts in equity is not a matter of right, but of sound legal discretion, and it will never be decreed unless the contract is just and fair in all its parts. Hard and unconscionable bargains will not be enforced, nor will relief be given in any cases where such a decree would be inequitable under all the circumstances.

In the present case, the verbal contract of sale was entered into with reference to the then value of Confederate money. At the time when the final sale was made, the complainant was in possession of facts that had then very greatly impaired the value of this money, if they had not already rendered it utterly worthless. Instead of communicating these facts to the defendant,

complainant, in his letter, wholly abstained from any allusion to them, and put his anxiety to close the purchase on wholly different grounds. Had the defendant been aware of the facts that were within the knowledge of complainant, it is not at all supposable that he would have entered into the contract. The consideration paid for the cotton was grossly inadequate, and the circumstances disclose a case not at all entitled to the consideration of a court of equity. The failure to notify a disaffirmance of the contract, and to return the money at an earlier day, is sufficiently explained.

Without any reference to other important questions presented by the record, and regarding the case in the strongest and most favorable light for the complainant, we think the decree of the court below, dismissing the petition, was correct, and ought to be affirmed.