YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.* SOUTHERN RAILWAY COMPANY, IN MISSISSIPPI.

1. CONSTITUTIONAL LAW. *Constitution 1890, sec. 87. Railroad corporation. Private corporation.*

   A railroad corporation is a private one, within the meaning of Constitution 1890, sec. 87, prohibiting the suspension of general laws for the benefit of any individual or private corporation.

2. SAME. *Constitution 1890, sec. 179. Laws 1902, p. 141, ch. 89. Charter Yazoo & Mississippi Valley Railroad Company. Laws 1882, p. 838. Code 1892, § 3572. Ib., § 3560, as amended laws 1898, p. 95, ch. 80. Constitution 1890, sec. 89. Competing railroads. Local and private legislation.*

   Laws 1902, p. 141, ch. 89, purporting to authorize the Yazoo & Mississippi Valley Company, a corporation created by special legislative charter (Laws 1882, p. 838), having perpetual succession and greater powers than are conferred by the general corporation law of the state (Code 1892, §§ 3572 *et seq.*), to purchase and operate under its special charter a part of the railroad tracks of the Southern Railway Company in Mississippi, a corporation organized under the general corporation law of the state, is unconstitutional:

   (*a*) It violates Constitution 1890, sec. 179, prohibiting the legislature from passing any law for the benefit of an existing corporation except upon condition that it shall thereafter hold its charter and franchises subject to the provisions of the Constitution; and

   (*b*) It violates Constitution 1890, sec. 87, prohibiting the legislature from suspending a general law for the benefit of any individual or private corporation, since the act, if operative, suspends Code 1892, § 3560, as amended Laws 1898, p. 95, ch. 80, a general law, forbidding competing railroad companies to operate parallel lines within twenty miles of each other, or to lease or purchase the lines of each other or any part thereof; and

(c) The act (Laws 1902, p. 141, ch. 89) is not saved by Constitution 1890, sec. 89, prescribing certain legislative formulas by which the passage of such local and private legislation as is not prohibited is legalized, since the section, 89 of the Constitution, must be construed with section 87 thereof, and held to refer to the acts enumerated in the latter section other than the suspension of general laws for an individual or private corporation.

FROM the chancery court of Leflore county.

HON. CAREY C. MOODY, Chancellor.

The Southern Railway Company, in Mississippi, appellee, was complainant in the court below, and the Yazoo & Mississippi Valley Railroad Company, appellant, was defendant there. From a decree in complainant's favor the defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*Mayes & Longstreet* and *J. M. Dickinson,* for appellant.

In this case, for obvious reasons, we prefer that the objection to this law should be presented to the court by counsel other than ourselves, and, therefore, we have not only agreed, but we have agreed willingly, that Messrs. Green & Green shall intervene *amici curiae* and urge the objections which are applicable to this contract.

Of course, in the nature of things, it is impossible that any new railroad arrangements shall be made whereby existing lines are changed, even to a small extent, but what there will be more or less of local opposition. It is for the legislature, looking to the interest of the state as a whole, or to the larger interests of wide communities, to determine what shall be done in a matter of this sort.

Now, Messrs. Green & Green will represent to the court the opposition of the local community so far as any such opposition exists, and we do not, therefore, feel it incumbent upon us to brief this case any more extensively than they have briefed it, and we adopt their brief as part of our argument.

However, further, in order that the court shall be fully advised, and have all the light before it possible, we incorporate into this brief the opinion of the Hon. J. A. P. Campbell, who was employed by the opposition interest, as we understand it, to make the argument in opposition to this bill while the same was pending before the legislature.

### OPINION OF JUDGE CAMPBELL.

"As to the competence of the legislature to enact a law suspending the operation of section 3560 of the code in favor of a railroad corporation. That section 3560, amended in 1898 (chapter 80 of Acts of 1898), is a general law, is indisputable, and that railroad corporations are not private corporations is clear beyond dispute. I think nothing to the contrary can be found in the books. Section 87 of the constitution contains this provision, viz: 'Nor shall the operation of any general law be suspended by the legislature for the benefit of any individual or private corporation or association.' This is an independent, substantive clause prohibiting the legislature from suspending the operation of a general law for the benefit of an individual or private corporation or association. It is in the section which prohibits special or local laws, where the case can be provided for by general law, or relief be given by a court, and where a general law can be made applicable, but it distinctly declares that 'the operation of a general law shall not be suspended for the benefit of any individual or private corporation or association,' and this specifies the sort of special law prohibited absolutely, and not conditioned on whether a general law can be made applicable.

"The absolute and unconditional prohibition of such a law is not affected by section 89 of the constitution, and is not subject to it. That section relates to local or private bills, and does not embrace the suspension of a general law for the benefit of an individual or private corporation or association, which particular kind of law is absolutely forbidden by section 87,

and therefore cannot be lawfully passed by any sort of procedure.

"My view is that section 87 declares that special or local laws, such as the legislature may pass, shall not be enacted where a general law would meet the case or relief can be obtained in court, but a law to suspend the operation of a general law, for the benefit of an individual or private corporation or association, is absolutely and unconditionally prohibited, and passing it in strict conformity to section 89 would not make it valid, because that section has reference to local and private bills other than those specifically and by name prohibited. In other words, the local or private bills meant by section 89 are those other than to suspend the operation of a general law for the benefit of an individual or private corporation or association, for such a law is not to be passed at all, in any way. It is placed by section 87 beyond legislative power. Like the tree of knowledge of good and evil, it is forbidden fruit.

"Section 87 contains three distinct clauses. The first is that 'no special or local law shall be enacted for the benefit of individuals or corporations, in cases which are or can be provided for by a general law, or where the relief sought can be given by any court of this state.' The second is, 'Nor shall the operation of any general law be suspended by the legislature for the benefit of any individual or private corporation or association.' The third is, "And in all cases where a general law can be made applicable, and would be advantageous, no special law shall be enacted.' The first and third clauses are conditional. The second is absolute and unconditional, and positively prohibits the legislation mentioned in it.

"Section 89 prescribes the mode of procedure in reference to bills mentioned in the first and third clauses of section 87.

"A reference to page 212 of Official Journal of the Constitutional Convention of 1890, where section 87 is reported by the committee as section 49 of its report will be found, will remove

all doubt of the correctness of my analysis of it. It was adopted by the convention as reported.

"My opinion is that any act of the legislature to suspend the operation of a general law for the benefit of any individual or private corporation or association will be void, as being directly in the face of the constitution.

"The last clause of section 89 prohibits the courts from annulling an act of the legislature passed in conformity to that section (other than certain excepted cases), because of its local, special or private nature, but there is no restriction on the courts as to an act to suspend the operation of a general law, for the benefit of an individual or private corporation or association that is left to condemnation because of its unconditional prohibition by the second clause of section 87.

"J. A. P. CAMPBELL, *Counselor at Law.*

"*Jackson,* February 20, 1902."

*Green & Green,* for certain interested citizens not parties to the record.

By the courtesy of the solicitors for the appellant and appellee we appear as solicitors for certain citizens and property holders to be affected by the execution of the proposed contract of sale, and the tearing up and abandonment of one of the lines of railroad. These citizens and property owners along the line of the railroad proposed to be abandoned are opposed to the sale, and, hence, appear to prevent it.

Specific performance will not be decreed as of right, but according to the sound judicial discretion of the court. *Hester* v. *Hooker,* 7 Smed. & M., 768; *Daniel* v. *Frazer,* 40 Miss., 507.

The Yazoo & Mississippi Valley Railroad Company was chartered in 1882, Laws 838, with many special privileges, such as fixing its own rates within maximum and minimum limits, perpetual succession, etc., and which would be violative of constitution of 1890, sections 88, 90, if granted now; and the Southern Railway Company was chartered and organized

under the constitution of 1890, and it was not for the public welfare that the proposed line of railroad, under this special privilege charter, should take the place of the line of the Southern Railway Company, which is subject to the supervision and the other constitutional limitations as to duration and powers by the constitution of 1890.

"And the exercise of the police powers of the state shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe upon the rights of individuals or the general well-being of the state."

The substitution of the specially privileged corporation for one not specially privileged, and to authorize and specially privileged railroad, with its special powers to fix rates beyond legislative supervision, to succeed the public functions and duties of the one so specially privileged, and with its other special privileges, would be to abolish the competition of the road, whose rates would be regulated, and to turn the people and their business over, without competition to the railroad whose rates, within the prescribed limits, were what it pleased to make them. Thus competition in rates is not only abolished, but the succeeding railroad cannot be even regulated as to rates.

Such a statute expressly violates section 190 of the constitution, for thereby the police powers of the state are abridged; and the police power is exercised to permit corporations to conduct their business in such manner as to infringe upon both the rights of individuals and the general well-being of the state.

"Prohibitions against consolidation of competing railroads are declaratory of public policy. Practical as well as technical consolidation contravenes such provisions." Noyes Inter. Corp. Rel., sec. 36.

It will be specially noted that the Southern Railway Company is trying to compel the Yazoo & Mississippi Valley Railroad Company, against its will, to accept the terms of the contract of sale proposed, and in the face of the objection of the Yazoo & Mississippi Valley Railroad Company that the

act is unconstitutional, and confers no power to make this sale. Thus it would appear that the Southern Railway Company has procured the passage of this chapter 89 in its own interest, and without the application of the Yazoo & Mississippi Valley Railroad Company to the legislature to amend its charter so as to give it the power to purchase. The record is silent as to any procurement or consent of the Yazoo & Mississippi Valley Railroad Company to this proposed enabling amendment to its charter, and under the constitution of 1890. So as it objects to the constitutional enactment of this proposed amendment, it cannot by its acts or declarations be said by this record to be shown that the Yazoo & Mississippi Valley Railroad Company has accepted this amendment to its charter, and that it propounds it as its enabling power to make this sale. This doubtful attitude is explained, possibly, by the provisions of constitution of 1890, section 179, which forbids the legislature to alter or amend the charter of a then existing corporation, or to pass any general or special law for the benefit of such corporation, except upon the condition that such corporation shall thereafter hold its charter and franchises subject to the provisions of this constitution; and the reception by any corporation of any provision of any such laws, or the taking of any benefit or advantage from the same, shall be conclusively held an agreement by such corporation to hold thereafter its charter and franchises under the provisions of the constitution.

If the Yazoo & Mississippi Valley Railroad Company had accepted the provisions of this chapter 89, Laws 1902, and had so averred upon the record, then its perpetual succession would have become limited to fifty years, and all of its contract rights in its charter provisions would have been annulled. Hence, we assume the Yazoo & Mississippi Valley Railroad Company does not appear on this record as accepting the terms of this act and of the contract made thereunder.

In order that there may be authority to make a sale of a railroad there must be power given by charter of the vending

corporation to sell, and by the charter of the purchasing corporation to buy. "The underlying principle is that property necessary to enable a corporation to fulfill its obligations to the state is impressed with a trust in favor of the public." Noyes Inter. Corp. Rel., sec. 127; *Thomas* v. *Railroad Co.,* 101 U. S., 71.

Hence, on a bill for specific performance it would not be decreed unless both the purchasing and vending railroad corporation had power, beyond doubt, to make the sale.

By section 88 of the constitution it is provided, "The legislature shall pass general laws . . . under which cities and towns may be chartered and their charters amended, and under which corporations may be created, organized, and their acts of incorporation altered; and all such laws shall be subject to repeal or amendment."

And again, in furtherance of the same general purpose, by section 178, it is provided that "corporations shall be formed under general laws only."

Passing for a moment the broad provisions of section 88, and confining ourselves strictly for the present to those of section 178, it is clear that the statute in question applies to only two special corporations. That its operation is limited to them, and that they are singled out by its provisions from the many other railroads in the state, and by this special enactment these two special corporations receive special corporate rights and powers that each did not theretofore possess, and that these powers and privileges accrued to them under and by virtue of this act, applicable to them alone, conferring special powers on special corporations by a special act.

Does such an act, so limited and circumscribed in its operation and in its application, violate the broad constitutional mandate that corporations shall be formed under general laws only?

It is beyond the power of the legislature by a special act to confer invidious special privileges upon special corporations by

a special act because it is forbidden to "form" corporations under any but general laws. The leading case on this question is *Ex parte Pretz,* 9 Iowa, 32, where the question is fully and learnedly discussed, and we respectfully request special attention to the masterly opinion therein. This case was approved and followed in *Davis* v. *Woolnough,* 9 Iowa, 104; *McGreger* v. *Baylies,* 19 Iowa, 40, wherein the prior Iowa cases are collected and reviewed. *San Francisco* v. *Waterworks,* 48 Cal., 493; *Waterworks* v. *Bryant,* 52 Cal., 140; *Trust Co.* v. *Railroad Co.,* 80 Fed., 218; *State* v. *Down,* 60 Kan., 790.

This act is an amendment to the charter of the Southern Railway Company, and of the Yazoo & Mississippi Valley Railroad Company, and further violates section 178, constitution of 1890.

"Corporations shall be formed under general laws only."

Quod these lines of railroad in this act described in Leflore and Tallahatchie counties, and their consolidation, the charter powers of Yazoo & Mississippi Railroad Company would be that of a new corporation, with franchises derived from and arising only under the act.

"A special act authorizing consolidation contravenes a constitutional provision against the creation of corporations by special act." Noyes Inter. Corp. Rel., sec. 19; *Shields* v. *Ohio,* 95 U. S., 323.

Chapter 89, Laws 1902, violates also section 87 of the constitution of 1890 in that it is a special or local law enacted for the benefit of these two special corporations in respect to the right to abandon the maintenance and operation of a part of its road, and to the sale of a part of one railroad to another, and the franchises to be exercised thereunder, all of which can be provided for by a general law.

And in this, by chapter 80, acts 1898, it is made a general statute unlawful for any railroad to lease or purchase directly or indirectly parallel or competing railroad or any part thereof, and such contracts are prohibited under penalty.

The act violates section 87, which declares: "Nor shall the operation of any general law be suspended by the legislature for the benefit of any individual or private corporation or association." And section 198 which declares "the legislature shall enact laws to prevent all trusts, combinations, contracts and agreements inimical to the public welfare."

*Catchings & Catchings,* for appellee.

An inspection of the railroad map filed with appellant's answer, and its statements descriptive of the lines of road operated by it and by the appellee, demonstrate that the appellant and the appellee are not parallel or competing railroad companies as contemplated by the first paragraph of chapter 80 of the acts of 1898, and are not competing railroad companies operating parallel lines of road within twenty miles of each other, as contemplated by the second paragraph of said chapter.

Both the main line and the auxiliary line of the appellant run almost due north and south, and the main line of the appellee runs almost due east and west. They cross each other at right angles at the town of Greenwood, in Leflore county, Mississippi.

The fact that the Webb branch lies parallel to the auxiliary line of the appellant, and within twenty miles of it, does not bring the transaction in controversy within either the letter or spirit of chapter 80 of the acts of 1898.

As to the first paragraph of chapter 80 it may be said that the act of February 27, 1902, does not authorize the consolidation of the Yazoo & Mississippi Railroad Company and the Southern Railway Company in Mississippi, nor does it authorize the Southern Railway Company, in Mississippi, to permit its affairs to be in any manner managed, regulated or controlled by the Yazoo & Mississippi Valley Railroad Company, or to permit its affairs to be so managed, regulated or controlled by the same person or persons who manage, regulate or control

the affairs of the Yazoo & Mississippi Valley Railroad Company, and it does not appear that anything of that sort is contemplated.

As to the second paragraph of chapter 80 it is evident that it can only apply where there are competing railroad companies operating parallel lines of road within twenty miles of each other. As the Southern Railway Company, in Mississippi, and the Yazoo & Mississippi Valley Railway Railroad Company run in different directions, and cross each other at right angles, they clearly are not competing railroad companies, and the fact that the Southern Railway Company, in Mississippi, operates a short branch line which is parallel to the line of the Yazoo & Mississippi Valley Railroad does not make them competing railroad companies within the meaning of the act.

The parallel lines of road contemplated by the act are the main lines, or at least subsidiary or auxiliary lines of such proportion as to make them large and important factors in the business of the companies owning them.

An inspection of the map shows that only the business of the town of Greenwood can become a matter of competition, and even this can only be competed for by making use of the main line of the appellee, which in no wise is a competitor of the appellant. The Greenwood business which, in connection with the main line of the appellee, the Webb branch, might compete with the auxiliary line of the appellant, as compared with the whole volume of business done by either the appellant or the appellee, this court judicially knows to be not only trifling and insignificant, but so trifling and insignificant that it would be a great stretch of construction to hold that chapter 80 of the acts of 1898 was designed to preserve it.

The main lines of the appellee might become consolidated with the lines of the appellant without violating the provisions of chapter 80, for the reason that they clearly are not parallel or competing lines. If such consolidation should take place, excluding the Webb branch, then the Webb branch and the

auxiliary line of the appellant would not be competing lines for the business of the town of Greenwood, for in that event the main line of the appellee, having been consolidated with the lines of the appellant, could no longer be used, as it may now be, as if it were an extension of the Webb branch into the town of Greenwood. We say this merely to illustrate what we have hitherto said, that the Webb branch can compete with the auxiliary line of the appellant only because it belongs to the appellee, whose main line from Itta Bena eastward to Greenwood may possibly be used as though it were an extension of the Webb branch.

The termini of the Webb branch and the auxiliary line of the appellant are entirely different. The northern terminus of the Webb branch is at Webb station, and the southern terminus at the town of Itta Bena, on the main line of the appellee. The northern terminus of the auxiliary line of appellant is at the city of Clarksdale, in Coahoma county, many miles north of Webb station, and its southern terminus is at Jackson, in Hinds county, many miles south of Greenwood.

A case very strongly in point, in that of *Hawkinsville & F. S. R'y Co.* v. *Waycross Air Line R. Co.*, 39 S. E., 844, decided by the supreme court of Georgia in November, 1901. The statute of Georgia prohibits the construction of parallel lines of railroad within less than ten miles of each other. The southern terminus of the Hawkinsville road is at Worth, in Worth county, and the other terminus is Hawkinsville, in Pulaski county. The Waycross road runs from Waycross, in the county of Ware, about one hundred miles from Worth to Cordele, in Dooly county, and fully thirty miles from Hawkinsville. The general direction of the Hawkinsville road is north and south, and that of the Waycross road is east and west, the two main lines crossing each other nearly at right angles. Thus it will be seen that the main lines of the roads were situated exactly as the main lines under consideration in this case. The Hawkinsville company had built a branch road from Davisville, ten

miles in the direction of Fitzgerald, and under authority to construct a branch line to Fitzgerald from Davisville, which would be fifteen or twenty miles long.

The Waycross road had reached Fitzgerald from the opposite direction, and was proposing to extend its main line so that it would run nearly parallel to this branch line of the Hawkinsville road, and within ten miles of it. The Hawkinsville road attempted to enjoin the extension of the main line of the Waycross road upon the ground that it would be a parallel road to its branch line, and within ten miles of it, within the prohibition of the statute. The court declined to take this view of it, saying that the statute only applies where the termini of two roads are the same, while in the case before it the termini of the two roads were entirely different and widely separated.

The Atchison, Topeka & Santa Fe R. R. Co. purchased a controlling interest in the stock of the St. Louis & San Francisco Railroad Company. Certain stockholders of the latter company applied for an injunction to restrain the former company from voting this stock, basing their right to relief on the ground that this provision of the constitution of Missouri made the purchase unlawful because the effect was to give it the control of the St. Louis & San Francisco Railroad Company which was alleged to be a parallel and competing line. It appeared that the Atchison Company at the time of purchasing this stock managed and operated two railroads in Missouri, one from Kansas City northeastwardly through the state to Chicago, and one from St. Louis to Union, in Franklin county, a distance of about sixty miles. It was contended that the road from St. Louis to Union was a parallel and competing road with the St. Louis & San Francisco Railway, the control of which the Atchison company had acquired by purchasing the stock, but it was decided otherwise. *Kimball* v. *Atchison, T. & S. F. Co.,* 46 F., 888; *L. & N. R. R. Co.* v. *Ky.,* 161 U. S., 689.

In the case of *State* v. *Montana R. Co.,* 53 Pac., 623, the supreme court of Montana ruled that two roads were competing

lines when their relation to one another were such as to enable them to cut rates to principal or terminal points. *State* v. *Central of Georgia R. Co.*, 35 S. E., 37; *Dady* v. *Ga. & A. R. Co.*, 112 Fed., 828; *Rodgers* v. *Nashville, C. & St. L. R. Co.*, 91 Fed., 299.

The particular part of sec. 87 of our constitution which it is suggested may be offended by the act of 1902 is as follows:

"Nor shall the operation of any general law be suspended by the legislature for the benefit of any individual or private corporation or association."

This provision does not impose any limitation upon the power of the legislature which did not exist prior to the adoption of the constitution of 1890. It is merely declaratory of a principle of constitutional law which has always existed, and which was just as binding upon the legislature prior to the constitution of 1890 as it is now.

In Cooley's Constitutional Limitations, third edition, page 391, it is said: "The legislature may suspend the operation of the general laws of the state, but when it does so the suspension must be general, and cannot be made for individual cases or for particular localities."

An inspection of the statute of this state will show that the legislature has never interpreted this constitution limitation as preventing it from conferring special rights or privileges in its discretion, notwithstanding that by so doing it has conferred privileges and rights which were in addition to and aside from those embraced within the compass of general statutes.

The word "suspension" has a definite and well understood signification. It means just what it naturally imports. It is thus defined in Anderson's Law Dictionary: "Suspension— Temporary stopping of interdiction of the exercise of some power, proceeding, right, or law. As the suspension of, and to suspend a right of entry upon, and the presumption of, public lands, the running of the statute of limitations, the privilege of the writ of habeas corpus, rendering a decision or pronouncing

a sentence, execution of a judgment or a sentence, or from office."

Our statute books furnish numerous instances in which laws have been "suspended" so that the expression was well understood in connection with statutes in this state.

The legislature has always, when it deemed it proper to do so, enacted laws for particular persons or for particular cases. We have had, certainly as far back as the code of 1857, general statutes under which persons might have their names changed, under which children might be adopted, under which ferries might be establihsed, under which corporations might be created, and so on, yet our statutes are filled with special laws upon all of these subjects, and if the parties for whose benefit these special laws were passed usually if not always receive therefrom rights or privileges in excess of those which they could have obtained through the operation of the general laws.

The legislature of this state has so long exercised the power of enacting special laws, where general laws relating to the subjects of such special laws were not appropriate, that it is too late now to question its authority in this regard. During all of this time the legislature has been under the same constitutional limitation as to the suspension of general laws for the benefit of persons or private corporation as that especially written in the constitution of 1890, for, as we have seen, Judge Cooley declares that such limitation inheres in the very nature of our state governments.

The suggestion that the second paragraph of section 87 of the constitution prohibiting the suspension of general laws is all controlling, ignores also section 178 of the constitution, which expressly vests the legislature with the power to alter, amend, or repeal any charter of incorporation thereafter created, whenever in its opinion it may be for the public interest to do so. The legislature is not required to exercise this power under general laws.

The act of February 27, 1902, is undoubtedly an amendment of the charters of appellant and the appellee, conferring upon

them the powers and rights therein expressed. In fact, chapter 80 of the acts of 1898 is itself but an amendment of all the charters of incorporation of railroads which were existing and revocable when the constitution was adopted, or which might thereafter be created. It was enacted under the power reserved to the legislature by section 178 of the constitution. It was also an amendment of the charters of corporations then existing, whether their charters were revocable or not, in which the power to consolidate with parallel or competing lines had been conferred, but which had not been availed of. *L. & N. R. R. Co.* v. *Kentucky,* 161 U. S.

If, instead of passing the single act contained in chapter 80 of the acts of 1898, the legislature had, by separate acts, incorporated its provisions into each of the railroad charters in the state, the same result would have been reached, and in that event there could be no pretense that the inhibition of section 87 as to the suspension of general laws applied. That chapter 80 of the acts of 1898 is to be regarded in substance as an amendment of each of the railroad charters in the state is well settled, we think, by the authorities. *Danville* v. *Danville Water Co.*, 178 Ill., 299; *Northpoint Ins. Co.* v. *Utah Canal Co.,* 16 Utah, 246; *People* v. *Chicago Trust Co.,* 130 Ill., 268; *Bixler* v. *Butterfield,* 195 Ill., 147.

The concluding paragraph of section 89 of the constitution is as follows:

"If the bill is passed in conformity to the requirements hereof, other than such as are prohibited in the next section, the courts shall not, because of its local, special or private nature, refuse to enforce it."

The only local, private or special laws which are absolutely prohibited are those enumerated in sec. 90 of the constitution, and the act of February 27, 1892, is not one of the prohibited class. All other local, private or special laws, if passed in conformity to the requirements of section 89, are absolutely unassailable.

The act of February 27, 1902, appears, as far as the record is concerned, to have been passed in accordance with the requirements of that section, and this fact itself makes it unassailable.

Finally, we submit that railroad companies are not private corporations within the meaning of section 87 of the constitution. Section 184 of our constitution declares that all railroads which carry persons or property for hire shall be public highways, and that all railroad companies so engaged shall be common carriers. For many purposes railroads may be properly described as public corporations. In some respects they are private, and in others they are public corporations. Perhaps it would be correct to describe them as quasi public corporations. *Olcott* v. *Supervisors,* 16 Wall., 694.

Argued orally by *Marcellus Green,* for appellant, and by *T. C. Catchings,* for appellee.

CALHOON, J., delivered the opinion of the court.

The Southern Railway Company in Mississippi was chartered since the constitution of 1890 took effect. Its railroad runs east and west entirely across this state. One of its stations is Greenwood, and another is Itta Bena, a point seven or eight miles west of Greenwood. It owns a branch railway, running at right angles with its main line from Itta Bena, nearly due north, to Webb, at which point the branch terminates; and it owns the rights, franchises, rights of way, turnouts, branches, main and side tracks, and improvements pertaining to it. The existence of this corporation is limited to 99 years. Constitution, sec. 178. Its charter is under general laws, Code 1892, § 3572 *et seq.* Section 3587 forbids consolidation with a "parallel or competing road." Section 3588 forbids it ever to lease "parallel or competing lines." The Yazoo & Mississippi Valley Railroad Company owns a line of railroad starting at Jackson, Miss., where it has connection with trains to New Orleans, La.,

and running northerly through nine or ten counties to Clarksdale, where it connects with trains to Memphis, Tenn. In its course it crosses the main line of the Southern Railway Company at Greenwood; and Webb, the terminal of the branch road referred to, is also a station on its line. Both roads run around Swan Lake; the branch of the Southern referred to on the western, and the Mississippi Valley on the eastern, margin. Clearly, there is competition between the two companies for the 33 miles between Webb, the terminal point of the branch, and the main line of the Southern. It is not open to rational discussion that as to this 33-mile branch the two roads are both competing and parallel in view of the law. The Yazoo & Mississippi Valley Railroad Company was chartered February 17, 1882 (Laws 1892, p. 838), long before our present constitution was ordained, and its charter is perpetual, and gives it powers and privileges of various sorts at war with the present constitution, and not enjoyed or obtainable by any railroad company which has come into existence since that constitution, or ever will come into existence while it remains in force. These two companies desired to effect a sale of the 33-mile branch, by which the ownership should be transferred to the Yazoo & Mississippi Valley. Both knew that this could not lawfully be done, and so the following legislation was procured:

Chapter 89, p. 141, Acts 1902, is as follows:

"Section 1. That the Yazoo & Mississippi Valley Railroad Company be and is hereby authorized and empowered to *lease or purchase and to maintain and operate the tracks,* rights of way and other property of that certain *branch* of the Southern Railway Company in and between the stations of Itta Bena, in Leflore county, and of Webb, in Tallahatchie county, Mississippi, and *all the rights and franchises to such* branch appertaining, and the said Southern Railway Company is also hereby empowered to *lease or sell the same.* to the said Yazoo & Mississippi Valley Railroad Company.

"Sec. 2. Whenever the said lease or purchase shall be made, the said Yazoo & Mississippi Valley Rairoad Company is hereby authorized and empowered to *connect its present line or lines with the branch* so leased or purchased at Black Bayou or at Glendora, in Tallahatchie county; and also said company is authorized and empowered, if it shall so desire, to *tear up and abandon all or any part of such branch lying north of said connecting point;* and also if it shall so desire, to *tear up and abandon* all that portion of the present line of said Yazoo & Mississippi Valey Railroad Company *lying between said connecting point and Minter City,* and all that *other portion* of the present line of said Yazoo & Mississippi Valley Railroad Company lying between *Phillips Junction and Mill Bayou* Junction, in Leflore county.

"Sec. 3. Whenever the said lease or purchase shall have been made, and the said parts of said branch end of said present line of the Yazoo & Mississippi Valley Railroad Company shall have been torn up and abandoned, the said Yazoo & Mississippi Valley Railroad Company shall, within two years thereafter, *construct under its present charter,* and shall thereafter maintain and operate in connection with its present lines, a new line of railroad extending from Itta Bena southward to a connection at or near Belzona. But if said extension from Itta Bena southward is not finished and in full operation within two years from such purchase or lease, the power to purchase or lease is hereby rescinded, and this act shall be of no effect."

Upon the passage of this act the bargain, at $225,000, was agreed on, conveyance tendered, and the purchase price demanded. But both doubted, manifestly, the constitutionality of the legislative act above quoted, or at least what the courts might hold on that question, and so the Southern filed its bill for specific performance of the contract of sale and purchase, and the case is here from the sustaining of the Southern's exceptions to the answer of the Yazoo & Mississippi Valley, which answer sets up that question.

Divers points are made on clauses of the constitution and acts, and it is convenient first to set these clauses and acts before the profession with the language of them which is precisely pertinent italicized to catch the eye, and then dispose of such as we decide upon:

Section 87 of the constitution is as follows:

"Sec. 87. No special local law shall be enacted for the benefit of *individuals or corporations* in cases which *are, or can be provided for by a general law,* or where the relief sought can be given by any court of this state; *nor shall the operation of any general law be suspended by the legislature* for the benefit of any *individual or private corporation or association,* and in all cases where a general law can be made applicable no special law shall be enacted."

A railroad corporation is a "private corporation" in the purview of the second clause of this section.

Section 88 of the constitution is this:

"Sec. 88. The legislature shall pass general laws, under which *local and private interests* shall be provided for and protected, and under which cities and towns may be chartered and their charters amended, and under which corporations may be chartered, organized, *and their acts of incorporation altered;* and all such laws shall be subject to repeal or amendment."

Accordingly the legislature did enact a general law pertinent to the matter in hand. It appears in Code 1892, § 3560, and the amendment to it on pages 95 and 96, ch. 80, of the acts of 1898, as follows:

"Section 1. Be it enacted by the legislature of the state of Mississippi, that section 3560 of the annotated code of 1892 be amended so as to read as follows: It shall be unlawful for any railroad company to consolidate with a parallel or competing railroad company, or to allow its affairs to be in any manner managed, regulated, or controlled by any such parallel or competing railroad company, or permit its affairs to be so managed, regulated or controlled by the same person or persons who man-

age, regulate or control the affairs of such competing or parallel railroad company under penalty of the forfeiture of the charters and franchises of such company or companies, and all persons, agents, or companies so offending shall be liable to the penalty of ten thousand dollars. And it shall further be unlawful for *competing railroad companies operating parallel lines of road* within *twenty miles of each other* to lease or purchase directly or indirectly, the opposing line *or any part thereof or any interest therein.* Such contracts, no matter in whose name made, are hereby prohibited under the penalties in this section provided."

Section 178 of the constitution provides as follows: "Sec. 178. Corporations shall be formed under *general laws only.* The legislature shall have full power to *alter, amend or repeal any charter of* incorporation *now existing and revocable,* and any that may hereafter be created, whenever, in its opinion, it may be for the public interest to do so; provided, however, that no injustice shall be done to the stockholders. No charter for any private corporation for pecuniary gain shall be granted for a longer period than *ninety-nine years.* In assessing for taxation the property and franchises of corporations having charters for a longer period than ninety-nine years, the increased value of such property and franchises arising from such longer duration of their charters shall be considered and assessed; but any such corporation shall have the right to *surrender the excess* over ninety-nine years of its charter."

Section 179 is this: "Sec. 179. The legisature shall never remit the forfeiture of the franchise of any corporation now existing, *nor alter nor amend* the charter thereof, nor pass any *general nor specific law* for the benefit of such corporation, except *upon the condition* that such corporation shall thereafter hold its charter and franchises *subject to the provisions of this constitution;* and the reception by any corporation of any provision of any such laws, or any taking of any benefit or advantage from the same, shall be conclusively held an agreement by

such corporation to hold thereafter its charter and franchises under the provisions hereof."

Section 198 is this: "Sec. 198. The legislature shall enact laws to prevent all trusts, combinations, or contracts, and agreements inimical to the public welfare."

Section 89 is this: "Sec. 89. There shall be appointed in each house of the legislature a standing *committee on local and private legislation,* the house committee to consist of seven representatives and the senate committee of five senators. No local or private bill shall be passed by either house until it shall have been referred to said committee thereof, and shall have been reported back with a recommendation in writing that it do pass, *stating affirmatively* the reasons thereof, and why the end to be accomplished should not be reached by a general law, or by a proceeding in court; or, if the recommendation of the committee be that the bill do not pass, then it shall not pass the house to which it is so reported unless it be voted for by a majority of all the members elected thereto. *If a bill is passed in* conformity to the requirements hereof, *other than such as are prohibited* in the *next section,* the courts shall not, *because of its local, special or private nature,* refuse to enforce it."

The next section (90) forbids the passage of any "local, private or special laws" under 21 different headings, one of which is: (r) Conferring the power to exercise the right of eminent domain, or granting to any person, corporation or association the right to *lay down railroad tracks or* street car tracks in any other manner than that prescribed *by general law."*

Section 190 is this: "The *exericise of the right of eminent domain shall never be abridged,* or so construed as to prevent the legislature from taking the property and franchises of incorporated companies and subjecting them to public use; and the *exercise of the police powers* of the state *shall never be abridged or* so construed as to *permit corporations* to conduct their business in such manner as to *infringe upon the rights of individuals or* the general well-being of the state."

Section 184 makes all railroads carrying persons or property for hire *"public highways."*

Section 5, ch. 88, p. 127, Laws 1900, in reference to trusts and combines, is as follows: "No corporation shall directly or indirectly *purchase or own the capital stock or any part thereof* of any other corporation, nor directly or indirectly *purchase, or in any manner acquire the franchise, plant or equipments* of any other corporation, if such other corporation *be engaged in the same kind of business and be a competitor therein.* Any corporation offending against this provision *shall forfeit* its *charter,* if a domestic corporation, and, if a foreign corporation, shall forfeit its right to do business in this state, and shall be proceeded against by the attorney general in the manner and form provided in section 4 of this act."

The contract of sale before us can be valid only if the Southern Railway and Yazoo & Mississippi Valley Railroad both had the power to make it under the constitution and laws of the state. If the former is powerless to sell, or if the latter is powerless to buy, the bargain is invalid, of course, and will not be enforced by the courts. The two roads are nowhere more than 7 or 8 to 10 miles apart, and for the first 12 or 15 miles coming south from Webb, except where they run on opposite sides of Swan Lake, are very close together, indeed, in some places being separated only a few yards. (We compute distances from the map in the record.)

Counsel for citizens living along the line of the road proposed to be abandoned were admitted by courtesy to file a brief for appellant in the cause, and they make points not presented in the other brief. We will indicate some of the contentions made in both as if made together in one.

1. It is contended that decreeing specific performance is a matter of judicial discretion, and should not be exercised in this case; and *Hester* v. *Hooker,* 7 Smed. & M., 768, and *Daniel* v. *Frazier,* 40 Miss., 507, are cited in support of this view. These cases are not applicable to that at bar. We do not see here any

room for judicial discretion if the contract of the sale was valid, there being no question of fraudulent or improper action on either side.

2. It is contended that, inasmuch as the Yazoo & Mississippi Valley Railroad Company had a charter granted before the constitution of 1890, giving it special privileges, such as fixing its own rates within fixed limits, perpetual succession, etc., the sale is violative of section 178, constitution 1890, requiring that corporations should be formed under general laws only; and of section 190, which provides that the exercise of the right of eminent domain shall never be abridged, and that the exercise of the police powers of the state shall never be abridged, or construed to permit corporations to conduct their business in such manner as to infringe upon the rights of individuals; and section 184, making railroads public highways; and of section 179, forbidding the amending of old charters except on condition of being subject to the new constitution.

3. It is insisted that the sale is also violative of section 17 of the constitution, which provides that private property shall not be taken or damaged for public use except on due compensation being first made to the owner. And the proposition is that the citizens along the line proposed to be torn up have rights arising out of the fact that property values have become adjusted to the convenience of transportation on that line, and improvements have been made in reference to it.

4. It is insisted that the sale is violative of section 87, constitution 1890, which forbids the suspension of the operation of any general law for the benefit of any individual or private corporation or association; and violative of section 88, which requires the legislature to pass general laws under which local and private interests shall be provided for, and under which corporations may be created, organized, and their acts of incorporation altered; and violative of section 89, forbidding the passage of any local or private bill until it has been referred to a standing committee on local and private legislation, and re-

ported back "that it do pass," stating affirmatively the reasons therefor, and why the matter could not be accomplished by general law or a proceeding in court; and violative of clause "r," sec. 90, as to eminent domain and laying down railroad tracks.

Chapter 89, p. 141, Acts 1902, attempting to authorize this sale, and to empower the purchaser to tear up and abandon one of the lines, cannot be upheld under section 179 of the constitution. If the Yazoo & Mississippi Valley Railroad Company had applied for such power, very clearly, by that section, it could not have received it by "any general or special law, except upon the condition that it thereafter hold its charter and franchises subject to the provisions of this constitution." This is what the Yazoo & Mississippi Valley Railroad Company desired to avoid, and was what that act designed to enable it to avoid. The organic law cannot be violated, or its true intendment emasculated, by direction or indirection. The whole of society is vitally interested in the maintenance, in its full integrity, of the constitution which it promulgated, as a whole and in its every part, until amended in the very manner it points out.

We cannot concur with learned counsel for appellee, that this bargain, and the act of 1902, which seeks to authorize it, can be held to consist with section 87 of the constitution and the general law of 1898, passed in pursuance of it. The act seems to have been framed with special purpose to avoid any question arising from the authorities they cite in inserting the words "or any part thereof or any interest therein." The general law on the subject (Code 1892, § 3560) was silent as to this. In fact the law of 1898 (page 95, ch. 80) amended that section by adding the following clause: "And it shall further be unlawful for competing railroad companies operating parallel lines of road within twenty miles of each other to lease or purchase, directly indirectly, the opposing line, or any part thereof or any interest therein. Such contracts, no matter in whose name made, are

hereby prohibited under the penalties of this section provided."
It is very certain that the contract in this record is in flagrant
disregard of this general law which was passed in pursuance of
section 88 of the constitution.   Section 87 of the section abso-
lutely prohibits the suspension of any general law for the bene-
fit of any private corporation, and this follows a prohibition of
laws for corporate benefit where they are provided for by gen-
eral law, or where relief can be had from the courts, and is fol-
lowed by a prohibition of any special law where a general one
.can be made so applicable. On this question we adopt the views
of Judge J. A. P. Campbell in his opinion given to the legisla-
ture, as follows: "As to the competence of the legislature to en-
act a law suspending the operation of § 3560 of the code in
favor of a railroad corporation.   That § 3560 of the code,
amended in 1898 (chapter 80 of the acts of 1898) is a general
law is indisputable, and that railroad corporations are private
corporations, is clear beyond dispute.   I think nothing to the
contrary can be found in the books. Section 87 of the consti-
tution contains this provision, viz.: 'Nor shall the operation of
any general law be suspended by the legislature for the benefit
of any individual or private corporation or association.'   This
is an independent, substantive clause prohibiting the legislature
from suspending the operation of a general law for the benefit
of an individual or private corporation or association.   It is in
the section which prohibits special or local laws where they can
be provided for by general law, or relief be given by a court, and
where a general law can be made applicable; but it distinctly de-
clares that 'the operation of a general law shall not be suspended
for the benefit of any individual or private corporation or asso-
ciation,' and thus specifies the sort of special law prohibited ab-
solutely, and not conditioned on whether a general law can be
applicable.   This absolute and unconditional prohibition of such
a law is not affected by section 89 of the constitution, and is not
subject to it.   That section relates to local or private bills, and
does not embrace the suspension of a general law for the benefit

of an individual or private corporation or association, which particular kind of law is absolutely forbidden by section 87, and therefore cannot be lawfully passed by any sort of procedure. My view is that section 87 declares that special or local laws, such as the legislature may pass, shall not be enacted where a general law would meet the case, or relief can be obtained in court; but a law to suspend the operation of a general law for the benefit of an individual or private corporation or association is absolutely and unconditionally prohibited, and passing it in strict conformity to section 89 would not make it valid, because that section has reference to local and private bills other than those specifically and by name prohibited. In other words, the local or private bills meant by section 89 are those other than to suspend the operation of a general law for the benefit of an individual or private corporation or association, for such a law is not to be passed at all in any way. It is placed by section 87 beyond legislative power. Like the tree of knowledge of good and evil, it is forbidden fruit. Section 87 contains three distinct clauses. The first is that 'no special or local laws shall be enacted for the benefit of individuals or corporations in cases which are or can be provided by a general law, and where the relief sought can be given by any court of the state.' The second is, 'Nor shall the operation of any general law be suspended by the legislature for the benefit of any individual or private corporation or association.' The third is, 'And in all cases where a general law can be made applicable and would be advantageous, no special law shall be enacted.' The first and third clauses are conditional. The second is absolute and unconditional, and postively inhibits the legislation mentioned in it. Section 89 prescribes the mode of procedure in reference to bills mentioned in the first and third clauses of section 87. A reference to page 212 of official journal of the constitutional convention of 1890, where section 87, as reported by the committee as section 49 of its report, will be found, will remove all doubt of the correctness of my analysis of it. It was adopted by the

convention as reported.  My opinion is that any act of the legislature to suspend the operation of a general law for the benefit of any individual or private corporation or association will be void, as being directly in the face of the constitution.  The last clause of section 89 prohibits the courts from annulling an act of the legislature passed in conformity to that section (other than certain excepted cases) because of its local, special, or private nature, but there is no restriction on the courts as to an act to suspend the operation of a general law for the benefit of an individual or private corporation or association.  That is left to condemnation because of its unconditional prohibition by the second clause of section 87."

We are not impressed that there is conclusive force in the argument so well presented that, because it was always pronounced by text-writers unwise legislation to suspend the operation of general laws for private advantage, before the constitution of 1890, and under constitutions not containing specific prohibitions of it, therefore long custom is an argument of interpretation in favor of legislation of that sort.  The fact that it distinctly appears in the present constitution, and especially in the connection in which it appears, is conclusive on the courts.  The concluding clause of section 89 can, by no fair rule of construction, be held to modify the express prohibition of section 87, or the class embraced in section 90.  The acts of every session illustrate this.

From the consideration of the constitution as a whole and the particular sections discussed, the evils existing and sought to be corrected, and committing ourselves to nothing except as herein decided, we are thoroughly satisfied to reverse the decree below and enter one here dismissing the bill at appellee's costs in both courts.

*Reversed, and bill dismissed here, with costs as stated.*