MOBILE, JACKSON & KANSAS CITY RAILROAD COMPANY *v.* STATE OF MISSISSIPPI, ET AL.

[41 South. Rep., 259.]

1. RAILROADS. *Consolidation. Consent of railroad commission. Agreements.*

A railroad company, formed by the consolidation of older companies under authority of the railroad commission, is bound by obligations imposed by the commission as a condition of the consolidation of the constituent companies.

2. SAME. *Charter provision. Waiver.*

Where two railroad companies obtained the consent of the railroad commission to consolidate on the faith of an agreement that the narrow-gauged track of one of them should be standardized and operated as a part of the main line, the new company cannot upon a second appeal to the supreme court, in a case enjoining the change of the course of the old narrow-gauged track, claim for the first time that its charter authorized the change.

3. CONSTITUTIONAL LAW. *Constitution 1890, sec. 87. Special and local Acts.*

The legislature by a special act cannot relieve a railroad corporation of duty and obligations resting upon it under a general law, since Constitution 1890, sec. 87, prohibits special acts for the benefit of individuals or corporations (*a*) in cases which can be provided for by general law, or (*b*) where the relief can be given by any court, or (*c*) in cases where a general law can be made applicable and would be more advantageous, and (*d*) forbids the suspension of general laws for their benefit.

4. SAME. *Stegall bill. Laws 1906, ch. 143, p. 150.*

The Stegall bill, Laws 1906, ch. 143, p. 150, is unconstitutional and violative of Constitution 1890, sec. 87.

FROM the chancery court of Pontotoc county.

HON. JOHN QUITMAN ROBINS, Chancellor.

The State of Mississippi and the railroad commission of the state of Mississippi, the appellees, were complainants in the court below; the railroad company, the appellant, was defend-

ant there. From a final decree in favor of the complainant, perpetuating an injunction, the defendant appealed to the supreme court.

The injunction restrained the railroad company, appellant, from abandoning an old depot site in the town of Pontotoc and that part of the line of the former Gulf & Chicago Railroad Company which led from the proposed new main line of appellant to the old site.·

When the Gulf & Chicago Railroad Company's line was originally built into Pontotoc the citizens of the town, by private subscription, contributed $5,500 in cash and furnished a right of way and depot site to said company, with the understanding and agreement that the depot would be located at one· of two designated points in the town, and it was located upon one of them, and there remained until after the ·consolidation of the company and another, and the ·absorption of them by the appellant company. The old depot house having burned, the appellant attempted to abandon its site and a part of the track of the old company, the Gulf & Chicago, and to locate a new depot some distance westward from the old site, and without the business part of the town, when this suit was begun in order to enjoin the abandonment.

The chancery court at first dissolved the injunction, and an appeal to the supreme court was prosecuted by complainants from the decree dissolving it. The case is reported, *State of Mississippi, et al., v. Mobile, etc., R. R. Co.,* 86 Miss., 172 (s.c., 38 South. Rep., 732). The supreme court reversed the decree of the chancery court, re-established the injunction and remanded the cause for further proceedings.

After the case was returned to the chancery court a hearing was had upon the facts of the case, and that court found that a valid and binding contract was entered into between the citizens of the town and the old railroad company, the Gulf & Chicago, and that the citizens had never consented to an aban-

donment by appellant; that the proposed change of line of railroad and depot site would be detrimental to the interest of the town and its citizens, and that there are no insurmountable obstacles to prevent the extension of the old line of railroad southward from the old depot site so as to connect with appellant's line.

Pending the present appeal, the legislature passed what was claimed to be a special act, known as the ·Stegall bill (Laws 1906, ch. 143, p. 150), which purported to ratify, confirm and make lawful the said abandonment by appellant of the old line and the depot site and the location by it of a new line and its relocation of the depot.

*McIntosh & Rich, George W. May,* and *Mayes & Longstreet,* for appellants.

*J. M. Thomas, W. M. Cox,* and *R. V. Fletcher,* assistant attorney-general, for appellees.

The briefs of counsel in this case were lost or mislaid, and the reporter has been unable to find them; hence no synopsis of them is given.

Argued orally by *Edward Mayes,* and *J. C. Rich,* for appellant, and by *J. M. Thomas, W. M. Cox,* and *R. V. Fletcher,* assistant attorney-general, for appellees.

WHITFIELD, C. J., delivered the opinion of the court.

The former opinion in this case expressly held that the consolidation was conditioned upon broadening and standardizing the then existing narrow-gauge railroad, and making it a part of the main line of railroad operated by the consolidated corporation. Whether the statements in the petition for consolidation "that the railroads were in no way parallel and competing," were "jurisdictional facts upon the existence of which depended the power of the corporation to consolidate," we

say nothing in this opinion. If that is too broad a statement, it certainly must be true, as held in the former opinion, that compliance with the statements in that petition as to broadening and standardizing the narrow-gauge railroad and making it a part of the main line of railroad were conditions upon compliance with which alone the consolidation was consented to by the railroad commission. If, therefore, these conditions were not complied with, the consolidation was of no effect. As held in the former opinion, if there had been no consolidation, these two railroads would have been parallel and competing lines, between which no consolidation was permissible under our laws, and, as held in the former opinion, an "express grant of power by the legislature" for the two companies to consolidate would have been void, as being in contravention of the general statutory inhibition against consolidation of purchase of competing lines of railroads, which cannot, without violating section 87 of the constitution, be suspended "for the benefit of any individual or private corporation or association." *Y. & M. V. Ry. Co.* v. *South. R. R. Co.,* 83 Miss., 746 (s.c., 36 South. Rep., 74).

Annotated Code 1892, § 3587, requires the consent of the railroad commission to a consolidation, and, as held in the former opinion, Laws 1898, ch. 80, p. 95, forbids the consolidation of parallel or competing railroads, and permitted the consolidation of other railroads only with the approval of the railroad commission. The appellants recognized this law as binding, and consequently, in their petition, stated that the railroads were "in no way parallel or competing lines," and expressly pledged themselves to broaden and standardize the then existing narrow-gauge railroad, and to make it a part of the main line operated by the consolidated corporation. It is nothing short of inequitable on the part of appellant, having gotten the consent of the railroad commission to consolidate upon these express conditions, to violate the conditions, and refuse to broaden and standardize the entire narrow-gauge road,

and make it a part of the main line of said railroad corporation; and it is upon this ground, and this ground alone, that we now hold that the decree of the chancellor should be affirmed. So far as the Stegall bill is concerned, it is perfectly obvious, as already held in the former opinion, that this special act, which was in substance for the benefit of this particular corporation, was, under the general statute laws which we have just referred to with respect to consolidation, palpably and manifestly violative of section 87 of the constitution, and plainly null and void.

We have nothing to say in this opinion about the depot or its location. On that point the court said before: "Where its new depot shall be located, in what portion of the town, is not a matter involved in this litigation, and is a question for future discussion between the appellees and the railroad commission." This declaration expressly took out of this case any consideration of the location of the depot. We have nothing to do with that matter. We deal alone with the obligation, voluntarily entered into by the appellants with the railroad commission, that, if they should be permitted to consolidate, they would broaden and standardize the then existing narrow-gauge railroad and make it a part of their main line; and that, and that only, is the core of this contention, and that, and that precisely, is what we deal with, and decide in this case, to wit, that these appellants are bound by their solemn obligation, deliberately entered into, as stated above, to broaden and standardize the narrow-gaue railroad and to make it a part of the main line. The depot is a matter with which we have no concern.

One or two other precautionary observations we make. The former opinion expressly waived any consideration as to "what are the subsisting legal rights and obligations arising under the alleged written contract as to the original location of the depot"; and we now further expressly decline to render any

decision as regards the rights of those citizens of the town of Pontotoc who contributed the $5,500 to insist upon a perpetual maintenance of the depot at the old location; nor do we intimate anything as to their right to institute damage suits; nor do we make any decision as to whether, in this suit by the state through its railroad commission, the rights of private parties could be at all properly considered. We dismiss each and all of these three propositions absolutely from our consideration. If it be true, as very ably argued by the learned counsel for appellants, that the contract for the perpetual maintenance of a depot at a particular place in a town might be void as against public policy, since the rights of the greater and larger public—the true public—are to be considered in such matters rather than the supposed rights of a few citizens who may own property near the depot, and who are charged with a knowledge of the law, it is yet not necessary to the decision of this case that that point should be determined. The view of the learned counsel for the appellants seems sound on the authorities cited from the United States supreme court, and from our own case, *State* v. *A. & V. R. R. Co.*, 68 Miss., 653 (s.c., 9 South. Rep., 469). But it could not at all be said, in view of that, if the contract originally made might be void as against public policy, that that consideration as to perpetual maintenance of the depot has anything whatever to do with the point in this case, which does not affect the depot at all, but only the agreement on the part of the appellant, as stated, to broaden and standardize the then existing narrow-gauge railroad, and to make it a part of its main' line. It was pointed out in the former. opinion that there could have been no consolidation, had the appellants' line of railroad been run through, because plainly then the two roads would have been parallel and competing. If, as an absolute necessity for running its road through to Middleton, Tenn., from Decatur, Miss., passing through Pontotoc county, these roads had to be first con-

solidated, so as not to become parallel and competing, and if, in order to obtain the consent of the state, through its railroad commission, appellants obligated themselves, in their petition for consolidation, to broaden and standardize the said narrow-gauge railroad and make it a part of the main line of its road, it is too late now to attempt to recede from these express conditions, too late to accept the benefits of consolidation and repudiate the solemn pledges made by appellants that it would broaden and standardize the said narrow-gauge and make it a part of its main line.

Nor do we desire to be understood as holding that the case of *Lusby* v. *Railroad*, 73 Miss., 364 (s.c., 19 South. Rep., 239; 36 L. R. A., 510), prohibits a railroad company, which has once located its line, from making any slight change in its line imperatively demanded by the necessities of the situation, provided that change can be accomplished without calling into exercise, for the second time, the state's power of eminent domain. 3 Elliott on Railroads, 930. Assuredly a railroad can make such change, if it can by private agreement with landowners acquire the change in the right of way necessarily demanded by the situation. We make this as a cautionary observation only, as we do not think the *Lusby case* has any bearing whatever upon the point upon which this case must turn. Nor do we think the contention of learned counsel for appellant that section 8 of the original charter of the Ripley Railroad Company, in Acts 1871, ch. 80, p. 275, to the effect that that company might exercise the power of eminent domain just as in its original location "for the purpose of making such railroad or repairing or changing it afterwards," at all effects the duty of these appellants, under their solemn agreement above set forth, according to the conditions on which the right to consolidate was granted, to broaden and standardize the said narrow-gauge railroad in its entire length, and make it a part of their main line of railroad. They did not stand in the court

below on this provision of their charter. They did not, in the inception of this matter, when they filed their petition for consolidation, invoke this section 8 as authority for "changing" the line of the narrow-gauge, deflected as shown by the evidence in this case it has been deflected. That would have presented a very different proposition; but they sought the change actually and precisely and only upon the conditions upon which the right to consolidate was granted them. It would be inequitable in the highest degree on their part to obtain the consent of the state, through its railroad commission, to consolidate upon the express agreement to broaden and standardize the narrow-gauge railroad in its entire length, and make it a part of their main line of railroad, and rest upon this alone, and here, for the first time, upon the second appeal to this court, to say, notwithstanding all this, that they had power under said section 8 to change the line of the narrow-gauge railroad as they might desire simply under said section 8. If section 8 gave them any such power, which we do not now decide, they have assuredly waived and are estopped to invoke it by their conduct in this matter.

In view of the various interests here involved, we direct the appellants to operate the spur track as soon as completed, connecting the main line on the north with the town of Pontotoc, broadening and standardizing it, the said spur track, and making it part of the appellants' main line, and that appellants shall have six months from the date of this decree within which to make it part of the main line; the supersedeas meantime to remain in force.

*With these modifications the decree is affirmed.*