# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MISSISSIPPI,

AT THE

# MARCH TERM, 1909.

---

JAY W. COOPER ET AL. v. MOBILE, JACKSON & KANSAS CITY
RAILROAD COMPANY.

[48 South. 832.]

RAILROADS. *Stations. Change of route. Location of depots.*

A railroad company having constructed a depot building on a new
line through a municipality, cannot, after being perpetually en-
joined from abandoning its old route, be restrained from moving
the depot to the old route, although the location of a depot was
not directly involved in the former litigation.

FROM the chancery court of Pontotoc county.

HON. JOHN Q. ROBINS, Chancellor.

Cooper and others, appellants, were complainants in the court
below and the railroad company, appellee, was defendant there.
From a decree in favor of defendant the complainants appealed
to the supreme court.

The opinion of the court states the facts.

*C. Lee Crum,* for appellants.

The order of the chancery court in *State v. Railroad Co.,* 86
Miss. 172, 38 South. 732, referred to as exhibit to the answer in
this present suit, does not require the appellee to remove the

(413)

depot, and if the order of the Mississippi Railroad Commission, referred to as exhibit to appellee's answer, does not require the removal of the depot, then it must be conceded in appellee's answer in this case, that it had no right to make such removal inasmuch as it has claimed the right upon no other grounds. The depot in question is located upon the main line of appellee's railroad and within the corporate limits of the town of Pontotoc. The case relied on by appellee, *State v. Railroad Co., supra,* was appealed in order that the principles of the case might be settled, and TRULY, J., in delivering the opinion of this case, strongly intimates that the appellee, in constructing the line of its road on which this depot is situated, exceeded its charter rights and authority. On such appeal the case of *Lusby v. Railroad Co.,* 73 Miss. 360, was relied upon as authority for this intimation. But on the second appeal of the case, *Railroad Co. v. State,* 89 Miss. 724, 41 South. 295, WHITFIELD, C. J., who delivered the opinion on such second appeal, held that the *Lusby case, supra,* did not apply. This later decision is clearly correct, because in the *Lusby case* the court held that the charter of the Kansas City, etc., Railroad Company, the company's only authority for the changing of its line of road as then located, does not authorize such a change, and that the railroad company has no such implied power, there being no insurmountable obstacle to require it. Under Code of 1892, § 3580, in ch. 112, appellee had authority to change its line of road. It follows, then, that the appellee had full authority under its charter to construct the line of road upon which is located the depot in question, and it had the authority under its charter rights to build the depot at the place where it is located, provided such place is reasonably convenient and accessible to the railroad company and to the public. The bill of appellants alleges such to be the case and the answer of the appellee admits it.

In *Railroad Company v. State,* 89 Miss. 724, 41 South. 259, relied upon by appellee, this court held that the present appellee should broaden and standardize the old line of its road because

it had agreed to do so as a condition of the consolidation of the two roads. The question of the location of a depot in the town of Pontotoc was not involved in the decision of the case cited.

A contract with individuals to locate and maintain a depot at a certain place cannot be enforced where it is against the public interest to do so. *Railroad Company v. Crandall*, 112 Am. St. Rep. 42. But where the railroad company has located its depot in a proper place, it cannot remove or relocate it elsewhere to the injury of individuals owning property near it, unless the interests of the public and of the railroad company demand the relocation. *Railroad Company v. People*, 22 Atl. 560. See also *State v. Railroad Company*, 68 Miss. 653, 9 South. 469; *People v. Railroad Company*, 120 Ill. 48; *Railroad Co. v. Molloy*, 64 Tex. 607; Code 1906, § 4863.

Code 1892, § 4309, is the only pretended authority found in our statute law for the action of the Mississippi railroad commission in this case. The Code of 1906, § 4863, provides that "Where the site selected by the railroad officials for depot buildings, or station houses, erected or to be erected, is inconvenient or inaccessible, the company must order the erection of a new building or station house and designate its site or location; but every depot must be located with regard to the interest of the railroad company and the public convenience." This section of the Code of 1906 is a re-enactment of the Code of 1892, § 4309. It will be noted, however, that Code 1892, § 4309, does not authorize the commission to act after the depot has been erected. If it be argued that the railroad commission had authority to act when it did because the appellee had begun, or was contemplating, building a depot on the site of the present depot, the answer to such argument is that it is admitted in the pleadings, that the place of the present location is more convenient and accessible for the railroad company and for the public than is any other place within the town of Pontotoc. *State v. Railroad Company*, 68 Miss. 653, 9 South. 469; *State v. Railroad Company*, 87 Miss. 679, 40 South. 263. The court below,

if it had followed the rule of law that should control in courts of equity, should have decided that a state of acts does not exist sufficient to give the Mississippi Railroad Commission jurisdiction of the subject matter. *State v. Railroad Company,* 87 Miss. 686.

*Flowers & Whitfield,* for appellee.

This cause has been in the supreme court twice. See *State v. Railroad Co.,* 86 Miss. 172, 38 South. 732 and *Railroad Co. v. State,* 89 Miss. 724, 41 South. 259. After the decision of the supreme court on the second appeal the case was carried by writ of error to the supreme court of United States and the decision of the supreme court of Mississippi was up-held throughout.

In the opinion of this court in *State v. Railroad Co.,* 86 Miss. 172, this court held that "it is the duty of the appellee to maintain, use, broaden and standardize the narrow-gauge road formerly belonging to the Gulf & Chicago Railroad Company so that it shall become a part of the line of railroad operated by the consolidated corporation." This holding located the line through the town of Pontotoc. It was necessary that the road should run along the old narrow-guage line to the old depot site. The learned chancellor of the court below had denied the injunction asked for by the Mississippi Railroad Commission, and upon the first appeal this court reversed the decree of the chancellor and remanded the cause. Further testimony was taken, and the matter was again heard before the chancellor who, following the opinion of the supreme court, sustained the contention of the state railroad commission, and his finding was affirmed by this court on the subsequent and second appeal. *Railroad Co. v. State,* 89 Miss. 724.

While this court in the former litigation did not deal with the question of the location of the depot, yet it there decided the questions which control the present appeal. It will be remembered that after the litigation above referred to, was ended by the decision of the supreme court, there was nothing

left for the railroad companies to do but build their line by
the old depot site. The courts had finally held that all of the old
narrow-guage line down to the old depot site must be made a
part of the main line extending through the town of Pontotoc,
"through the western part" of the said town. The companies
found that the money expended in the construction of that line
was thrown away; that they must rebuild along that part of the
old narrow-guage line which had been abandoned. As we have
already stated, the Federal court case which was filed for the
purpose of preventing the enforcement of the order made by the
Railroad Commission in January, 1904, was not prosecuted
pending the final decision in this other branch of the litigation.
After the Railroad Commission lost on their contention that
the companies did not have to build down to the old depot site,
the present appellee considered that the depot question was set-
tled in so far as the line built through the western part of the
town was involved. The depot of the company must be on its
line. The courts had held that the line must run by the old site.
The company could not then maintain a depot on the other line
which was held by the courts to have been constructed without
authority of law.

The line constructed through the western part of the town is
still there and still being used by consent of the Railroad Com-
mission. This leniency was extended by agreement because it
was recognized that the road was new and the company was
struggling to continue in actual operation. The decree of the
court, however, was recognized by the company as being final,
and it is only a matter of time when the change will be made.
The Railroad Commission will insist upon the completion of the
line southward from the old depot site as soon as it is convinced
that the company can raise the money with which to complete it
to the point where it will connect with the line as now con-
structed. The present appellee has complied with the decree in
so far as it requires the old narrow-guage line to be completed

for use down to the old depot site and is running its trains down to the said point.

The court will bear in mind that the order of the Railroad Commission, passed in January, 1904, is still in force; that the enforcement of it is not restrained by any injunction writ. This order was simply held in abeyance pending the determination of the question involved in the said other litigation. Soon after the final decision of the supreme court of the United States, the railroad company began to take steps to comply with the decree. Since the courts had held that the law had been violated by the construction of the line through the western part of the town and that the said line should be constructed by the old depot site, the line was at once completed down to the old site and has since been used. When the appellee, obeying the decision of the court, began to make preparation to remove the depot building from the western part of the town in order to place it on the line which the courts had located and on the selected spot by the Commission as a new depot site, appellants who owned property near the depot site in the western part of the town asked for an injunction against the removal.

Furthermore, the Mississippi Railroad Commission at the instance of the attorney-general of the state, himself a citizen of Pontotoc, asked an order requiring the appellee to abandon the depot which had been constructed in the western part of the town and to remove it to the main line and to the old site of the original depot in the town. It appeared that the appellee was acting (1) under the decree of the chancery court of Pontotoc county which had been affirmed by the supreme court of the United States fixing a location on its main line; and (2) under the order of the State Railroad Commission, passed in January, 1904, requiring the replacing of the depot on the old site in the town; and (3) under the order of the Mississippi Railroad Commission rendered on June 17, 1908, requiring the appellee to abandon the depot built in the western part of the town, and to remove and relocate it on the original depot site.

The appellee formerly preferred the site for which appellants are now contending, but the State Railroad Commission and the courts decided the matter against appellee. Appellee resisted, as long as it might, the efforts of the people of Pontotoc and of the Railroad Commission to compel it to build its line through the town of Pontotoc along the old site and to erect its depot on the original site. And now at this late·time, after all the decisions aforesaid, when it undertakes to obey the law and comply with the order of the railroad commission it is met by the efforts of the present appellants to prevent it.

Appellants cannot legally contend that two depots should be maintained in Pontotoc, nor that appellee should maintain a depot three-quarters of a mile from its main line. The rights of the appellants must be exerted, if at all, through the Mississippi Railroad Commission which body has exclusive authority over such matters. Yet appellants are not only ignoring the necessity of applying to the State Railroad Commission for relief, but they are setting themselves up against the State Railroad Commission and attempting in court to prevent appellee from obeying the valid orders of the Commission. The orders of the Railroad Commission, fixing the location of the depot, are not assailed except indirectly and collaterally. The Railroad Commission is not even a party in this cause.

BRAME,* Special Judge, delivered the opinion of the court.

· This is an appeal from a decree dissolving an injunction and dismissing a bill, which bill was filed in the court below July 20, 1908, by appellants to enjoin appellee, the Mobile, Jackson & Kansas City Railroad Company, from removing its depot from the present site in the western part of the town of Pontotoc to what is known as the old site near the center of the town, and where the old depot of the Gulf & Chicago Railroad Company

---

* FLETCHER, J., having been of counsel in this case before his appointment to the bench, recused himself and L. BRAME, ESQ., a member of the supreme court bar, was appointed and acted in his place.

was before it was destroyed by fire.    The history of the case is substantially as follows:

The appellee operates a railroad from Mobile, Ala., to Middleton, Tenn., which railroad traverses Pontotoc and other counties in the state of Mississippi.    That part of the line extending from a point near Decatur, Miss., to Middleton, Tenn., is owned by the Gulf & Chicago Railroad Company, and was leased by the appellee about the year 1903.    The Gulf & Chicago Railroad Company had built a narrow-guage railroad from Middleton, Tenn., down to the town of Pontotoc, and this had been operated as a narrow-guage road some time prior to the lease. In the year 1903, the Gulf & Chicago Railroad Company, with a Tennessee corporation of the same name, presented a petition to the Mississippi Railroad Commission asking leave to consolidate under the name of the Gulf & Chicago Railroad Company, and agreeing to widen and standardize the narrow-gauge road from Middleton, Tenn., to the southern terminus near Decatur. It seems that there was some controversy as to whether the petitioners obligated themselves to broaden and standardize the narrow-guage line throughout this entire length; but in the litigation hereinafter referred to this court upheld the contention of the Railroad Commission that there was such an obligation.    When the narrow-guage road was being operated from Middleton to Pontotoc, the southern terminus was at the depot in the town of Pontotoc, and in a valley.    After the Railroad Commission had given its consent to the consolidation, and about the time of the above-mentioned lease, work was begun to standardize the line and extend it southward from Pontotoc. The railroad company decided that it would be cheaper an better to change the location of the line at the town of Pontotoc, and instead of extending it south from the old depot, to diverge to the westward, about a mile and a half north of Pontotoc, and run the line through the western part of the town.    The purpose of the railroad company was thus to abandon a part of the old narrow-guage road, and it was claimed that this was not a vio-

lation of the agreement made with the Railroad Commission at the time it gave its consent to the consolidation. Thereupon the deflection was made, and the railroad was built around on the hills and through the western part of the town of Pontotoc, as the corporation limits had then been extended. Meantime the old depot building at the southern terminus of the narrow-guage line in the town of Pontotoc had been destroyed by fire, and the question arose as to building another depot.

About this time a petition of citizens was presented to the Railroad Commission to require the railroad company to rebuild the depot on the old site, and a counter petition opposing this was also filed; it being the desire of the counter petitioners and the railroad company at the time to have the depot at a point on the diverted line about three-quarters of a mile west of the site of the old depot. On January 12, 1904, the petition and counter petition came on to be heard before the Railroad Commission, which had visited the town of Pontotoc and examined the two proposed sites, when the following action was taken by the commission: "Ordered, that the Gulf & Chicago Railroad Company, leased by the Mobile, Jackson & Kansas City Railroad Company, erect a freight and passenger depot of sufficient size and dimensions to transact the business of the said town of Pontotoc, on the old site or on the grounds now occupied by them as a temporary depot; that said work be commenced not later than the 20th day of January, 1904, and completed within 90 days from said date, on or about April 20, 1904." The railroad company did not desire to obey this order, and thereupon shortly afterwards it filed its bill in the United States circuit court for the Southern District of Mississippi, seeking to enjoin the commission from enforcing the order. A preliminary injunction was granted, and while this was pending negotiations were had by the railroad company with certain citizens of Pontotoc, who desired to have the depot located on the new site, and accordingly it was determined to build it there and it was so built, and stands there to this day.

It appears from the record that the railroad company believed that the courts would finally decide that it was proper to locate the depot upon this new site. The road having been diverted and built through the western part of the town, and a small portion of the old line having thus been abandoned, on August 3, 1904, the state of Mississippi and the Railroad Commission joined in a bill in the chancery court of Pontotoc county, against the railroad company and its lessor, seeking to enjoin the defendants from abandoning that part of the line extending from the point of deflection on the north down to the old depot site in the town of Pontotoc, and a preliminary injunction was granted. The order of the Railroad Commission above mentioned was not directly involved in this litigation, but the location of the line of railroad through the town was involved; for if the old line was to be followed, unless there should be two depots, the location of the depot site was indirectly involved. A motion was made by the defendants to dissolve this injunction, which motion was sustained, and the complainants appealed to this court, and upon full consideration the decree was reversed, and the injunction was reinstated, and the cause was remanded. For a full report of this case, see *State v. Railroad Co.*, 86 Miss. 172, 38 South. 732, 122 Am. St. Rep. 277. The cause, being remanded, was again heard in the chancery court of Pontotoc county, and on March 10, 1906, a decree was rendered in favor of complainants, making perpetual the injunction which had been granted to prevent the abandonment by the railroad company of the old line. By its decree the court found as a fact that the citizens of the town of Pontotoc had never given their consent to the change of the depot from the old site to the new. From this decree the defendants prosecuted an appeal to this court at the November term, 1906, and the case was again considered by this court, and the decree was affirmed. See *Railroad Co. v. State,* 89 Miss. 724, 41 South. 259, 122 Am. St. Rep. 295. In delivering the opinion on that appeal, this court expressly stated that the location of the depot was not considered,

but it was held that the old line had to be followed. The railroad company, still being unwilling to follow the old line, or to construct a depot on the old site, took the case to the supreme court of the United States, which on May 18, 1908, rendered a decision affirming in every respect the decision of this court. 210 U. S. 187, 28 Sup. Ct. 650, 52 L. Ed. 1016.

After the final decision by the supreme court of the United States, on June 15, 1908, Hon. R. V. Fletcher, as attorney-general of the state and as a citizen of the town of Pontotoc, filed a petition before the Railroad Commission, reciting therein the former order of the commission in reference to the depot site made January 12, 1904, and the litigation hereinbefore set out between the state and the Railroad Commission on the one hand and the railroad companies on the other, and the fact that a final decision had been rendered, as above set forth, fixing the location of the line of railroad, and reciting, also, that the injunction suit, which had been reinstated by the railroad companies to enjoin the execution of the order of the Railroad Commission made January 12, 1904, had been abandoned and dismissed; and it was prayed in this petition that the commission would make an order requiring the railroad companies to discontinue the use of the depot in the western part of the town of Pontotoc and comply with the former order of the commission as to the depot site. On June 17, 1908, this petition came on to be heard before the Railroad Commission, and an order was entered reciting the filing of the petition and that the railroad companies were present and consenting that the prayer of the petition should be granted, and thereupon it was ordered that the depot should be removed from its location to the old site, the order to be effective thirty days from its date. While the railroad companies steadfastly opposed following the old line and rebuilding the depot on that line, it seems that by this time they had become convinced that further opposition was futile, and thereupon it seems that a temporary arrangement was made between the railroad company and the repre-

sentative of the state, by which the line as built and the depot as constructed should be used until such time as the road could be changed to the old line, when it was contemplated that the depot should be established and rebuilt on the old site.

This being the status of affairs, on July 20, 1908, the appellants, Cooper and ten other citizens of Pontotoc, filed the the bill in this case against the appellee, the Mobile, Jackson & Kansas City Railroad Company, averring that on or about January 1, 1904, having no railroad depot in Pontotoc, the railroad company invited the co-operation of the citizens in determining the place at which a depot should be established, in order that it might be accessible and convenient for the citizens of the town and for the railroad company; that in response to said invitation there was a public mass-meeting of the citizens of Pontotoc and vicinity, at which were present the officials of the defendant company; that a committee was appointed to consult with the officials of the company as to a proper and suitable location for the depot, with full authority to agree with such officials as to the location of the deopt, having due regard to the convenience and accessibility thereof for railroad company and the public; that the committee came to an agreement with the railroad company that the depot should be established at the present location in the western part of the town; that in accordance with this agreement the railroad company immediately thereafter in apparent good faith, claiming to believe that the place selected was most convenient and suitable for the depot, erected a commodious depot building and opened the same for the transaction of business; and that the same has since that time been maintained as the depot of the defendant. The bill further alleged that the place selected and agreed upon and being now used as a depot by the public and the defendant company is reasonably accessible and convenient for both the company and the public, and more so than any other location within the corporate limits of the town; that complainants, relying upon the express and implied agreement of the railroad company to main-

tain the depot at this place, expended large sums of money in the purchase and improvement of property situated near by, and that they are individually interested in having the depot maintained at said place. The bill further alleged that the railroad company, without lawful excuse or jurisdiction, threatened to and was undertaking to remove said depot building to another place, and would do so unless restrained by legal proceedings; that to discontinue said depot would be a great inconvenience to the public, and would cause special, pecuniary, and irreparable damage to plaintiffs. The bill further alleged that the company had no legal right to abandon said depot, and that the attempt to do so would be to exercise arbitrary and unlawful discretion. The bill prayed for a temporary injunction forbidding the defendant from removing the depot, and asked that on final hearing this injunction should be made perpetual and for general relief. The bill was sworn to, and an answer under oath was waived. By the fiat of the judge of the third district the temporary injunction was ordered to issue upon the complainants giving bond, conditioned according to law, in the sum of $1,500.

The injunction was duly issued, and the defendant railroad company answered the bill, not under oath, setting up as exhibits the records and opinions in the chancery suit above referred to, and also the orders of the railroad commission in reference to the location of the depot. The answer admitted the allegation as to there being no depot in the town, and the invitation to the citizens, and their participation in the selection of a depot site; admitted that the railroad company and a large part of the citizens agreed upon the location in the western portion of the town; and admitted that it was then believed that the site agreed upon was as convenient and accessible to the interested public as any that could be obtained. It was not denied that the complainants had expended large sums of money in the purchase and improvement of property situated near the depot site; but it was dneied that without lawful excuse or justifica-

tion the defendant was undertaking to discontinue and remove the depot. Defendant denied the allegation that to remove the depot would be a great inconvenience to the public, but admitted that some pecuniary damage might be suffered by complainants or some of them; but it was contended that the defendant was in no way responsible for such damage. It was denied that the company had no lawful right to remove the depot. The answer then set up the orders of the railroad commission and the litigation before referred to, and it was averred that the defendant did not desire to obey the order of the commission of January 12, 1904, an that it had filed its bill in the federal court to enjoin the enforcement of this order. Further, the answer set up that the defendant had resisted to the last the litigation instituted by the state and the railroad commission to compel the building of the road on the old line; but the defendant stated that after it had failed in the litigation, and it had been finally decided that the railroad should be built upon the old line, and the railroad commission had by two orders directed the building of the depot on the old line, it had conclued that further resistance was useless, and that it would obey the decree of the court, and said orders of the railroad commission in reference to the location of the depot; that it was in good faith proceeding to comply with the decree and said orders, and had entered into a temporary arrangement by which it was to have time to rebuild the railroad and to locate the depot on the old site, when it was enjoined from doing so; and it was averred that no alternative was left it but to obey the decree of the court under heavy penalties for any disobedience. The answer further set up that the defendant had its men and equipment at the town of Pontotoc for the purpose of executing its agreement with the railroad commission and the state of Mississippi to remove the depot to the old site, and that it had been delayed in this work by the suing out of the injunction.

A motion was made by the defendant to dissolve the injunction upon bill, answer, exhibits, affidavits, and records in said

chancery case.   Notice was given of this motion, and the same
heard by the chancellor in vacation on August 3, 1908, a decree
was entered sustaining the motion, dissolving the injunction,
and dismissing the bill.   The decree also awarded damages to
the defendant on the injunction bond in the sum of $188.33.
The complainants prayed and obtained an appeal to this court,
but supersedeas was disallowed.   In this court an agreement
of counsel is filed, showing that the case was heard on the plead-
ings, exhibits, and records hereinbefore set forth, and that the
transcript contains all the pleadings and proceedings in the
case, except the evidence that refers to the amount of damages
awarded for the suing out of the injunction; it being agreed
that the court did not err in assessing damages, unless is should
be held that the injunction was improperly dissolved.   The one
assignment of error is that the court erred in sustaining the
motion to dissolve the injunction and awarding damages.   It
may be noted that in 1906, pending the litigation above set out,
a special act of the legislature was passed which attempted to
ratify and confirm the abandonment of the old line of the nar-
row-gauge railroad before mentioned; but this act was held un-
constitutional and void.   See *Railroad Co. v. State,* 89 Miss.
724, 41 South. 259.

It seems obvious that the decree must be affirmed.   The or-
ders of the railroad commission fixing the location of the depot
are not assailed, except indirectly and collaterally.   The com-
mission is not made a party defendant.   Obedience to its orders
has never been restrained or enjoined by the judgment of any
court.   But we do not consider it necessary to decide whether
or not these orders are of themselves valid and conclusive as to
the location of the depot.   · The decree of this court, affirmed by
the decision of the supreme court of the United States, finally
and definitely fixed the location of the railroad on the old line.
While the location of the depot was not directly involved in that
litigation, the effect was to remove the depot from the present
site, because, of necessity, the depot must be on the railroad,

and it is apparent that there is no necessity for two depots in the town of Pontotoc. It is true the railroad company desired to build the line around through the western part of the town, and to locate the depot there, and it took the position that this was a convenient, accessible, and proper place for the depot; but, since the location of the main line has been determined adversely to its contention, there is nothing left for it to do but to build the railroad on the old line, and the relocation or the removal of the depot necessarily follows.

The decree is *affirmed.*